AD HOC COMMITTEE OF AZ-NM-TX-FL PRODUCERS OF GRAY PORTLAND CEMENT, PLAINTIFF v. UNITED STATES, DEFENDANT, AND APASCO, S.A. DE C.V. AND CEMEX, S.A., DEFENDANT-INTERVENORS

Court No. 90–10–00508

(Dated September 26, 1994)

*King & Spalding (Joseph W. Dorn, Martin M. McNerney* and *Michael P. Mabile)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(A. David Lafer), Terrence J. McCartin,* Attorney Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Manatt Phelps & Phillips (Irwin P. Altschuler, David R. Amerine, Ronald M. Wisla)* for defendant-intervenor.

## OPINION

RESTANI, *Judge:* This matter is before the court for decision following a remand determination. Remand was ordered as a result of an appellate decision in this case. *See Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States,* 13 F.3d 398 (Fed. Cir. 1994) *("Ad Hoc I")* (rejecting ITA rationale for deduction of pre-sale home mar-

---

[25] CEMEX suggests that verified total material cost information proves that the BIA chosen was unduly distorted. On remand, ITA may wish to refer to such data as a check on its selection.

ket transportation costs from fair market value ("FMV") for purpose of antidumping comparison). Upon remand, the Department of Commerce applied its previous circumstance of sale ("COS") adjustment methodology for purposes of comparison of FMV to both exporter sales price and purchase price sales. *See* 19 C.F.R. 353.56 (1994).[1] Thus, in accordance with past practice, pre-sale transportation expenses were allowed as an indirect selling expense for ESP comparison purposes. Further, because the pre-sale transportation expenses were not found to be directly related to sales, the expenses were treated as indirect selling expenses in the PP context.

In the present case, plaintiff does not object to the result reached by ITC, but rather challenges its reasoning. Specifically, plaintiff contests Commerce's contention that presale transportation expenses may be deducted from FMV as a COS adjustment if the respondent can show a direct relationship to sales under review. After consideration of *Ad Hoc I*, however, this basic methodology was approved by the court in the review of a later administrative proceeding. *See Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States,* Slip. Op. 94–151, at 9–10 (Sept. 26, 1994) *("Ad Hoc II").* For the reasons stated in *Ad Hoc II,* the court rejects plaintiff's argument.

CEMEX contends that Commerce erred when it failed to find CEMEX's pre-sale transportation costs directly related to sales, and thus in failing to deduct these costs from FMV for PP comparison purposes. CEMEX argues that the transportation costs at issue were those related to moving cement to warehouses that were specifically for facilitating sales transactions. Nevertheless, the court concurs with Commerce that CEMEX has not demonstrated that this particular pre-sale expense is directly related to sales. specifically, the court agrees that if the pre-sale warehousing expense in this case is not shown to be a direct expense, then it follows that the cost of transporting the cement to the warehouse is also not shown to be a direct expense.

The result reached by Commerce in this case would have been the same whether the *Ad Hoc I* court intended Commerce to engage in this inquiry for pre-sale transportation expenses in PP comparisons in this specific proceeding, or whether it intended, for fairness or efficiency reasons, to preclude the reexamination of this deduction to FMV according to COS methodology. The deduction was disallowed for PP comparisons here, and the result is consistent with either reading of *Ad Hoc I.* As indicated in *Ad Hoc II, Ad Hoc I* did not address Commerce's standard ESP methodology, except to note its existence. *Ad Hoc II,* Slip Op. 94–151, at 9–10. As the ESP issue was not before the appellate court, Commerce was not required to address such transactions at all on remand. As no

---

[1] United States Price ("USP"), purchase price ("PP") and exporter's sales price ("ESP") are defined at 19 U.S.C. § 1677a (1988). USP means "the purchase price, or the exporter's sales price, of the merchandise, whichever is appropriate." *Id.* § 1677a(a). PP is defined as "the price at which merchandise is purchased, or agreed to be purchased, prior to the date of importation, from a reseller or the manufacturer or producer of the merchandise for exportation to the United States." *Id.* § 1677a(b). ESP is defined as "the price at which merchandise is sold or agreed to be sold in the United States, before or after the time of importation, by or for the account of the exporter." *Id.* § 1677a(c).

one objected to such activity on remand, there is no reason to review Commerce's reversion to its previous treatment of FMV in the ESP context. Accordingly, for pre-sale transportation expenses, the remand determination allowing an ESP indirect sales expense COS adjustment to FMV, and disallowing a PP direct sales expense COS adjustment to FMV is sustained.